Corrigan, J.
In these consolidated appeals, we are called upon to clarify our Batson v Kentucky, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), jurisprudence and provide guidance to our lower courts. Specifically, this Court must decide whether the trial court in these cases determined that Batson had been violated; namely, we must discern whether the trial court concluded that the prosecutor exercised peremptory challenges to exclude certain prospective jurors from the jury pool on the basis of race. On the basis of our reading of the voir dire transcripts, we hold that no Batson violation existed in this case and the trial judge neither explicitly nor implicitly found that the prosecutor purposefully discriminated in the exercise of three peremptory challenges. Having reviewed the whole record and the fair inferences to be drawn from it, we cannot conclude that the trial judge implicitly found that the prosecutor purposefully discriminated. Instead, the trial judge’s ambiguous statements were driven by her goal of ensuring a racially mixed jury, not concern with determining whether the prosecutor’s asserted reasons for exercising peremptory challenges were a pretext. Indeed, the trial judge’s only clear statement reflected her finding that neither the prosecutor nor defense counsel *328 had engaged in racially discriminatory behavior. Accordingly, we affirm defendants’ convictions.
I. FACTUAL BACKGROUND
Defendant Knight and codefendant Rice were charged with first-degree murder, MCL 750.316, stemming from the shooting death of defendant Knight’s former girlfriend. Codefendant Rice was also charged with one count of possession of a firearm during the commission of a felony, MCL 750.227b. The prosecutor’s theory was that defendant Knight had unsuccessfully tried to hire someone to kill his former girlfriend. After his initial efforts failed, according to the prosecutor, defendant Knight bailed codefendant Rice out of jail in exchange for codefendant Rice’s killing the former girlfriend. Defendant Knight and codefendant Rice were tried jointly before the same jury.
During the third day of jury selection, defense counsel initially objected to the prosecutor’s use of peremptory challenges, claiming that the prosecutor was attempting to exclude African-American veniremembers. Defense counsel expressed particular dissatisfaction with the prosecutor’s reason for dismissing veniremember nine, which was that a member of veniremember nine’s family had been convicted of rape. Defense counsel then demonstrated his misunderstanding of Batson by responding, “I don’t believe that whether or not there is assaultive [sic] and battery involved in that particular person’s family is a basis on which to exclude someone when you already have a pattern. I have noticed this pattern since day one of the jury trial. That’s why seventy-five percent of the exclusions have been black.”
The prosecutor immediately interjected that she had excluded three African-American veniremembers and *329 four Caucasian veniremembers and offered race-neutral reasons for excluding the African-American veniremembers. The trial judge stated, “There have been four whites excluded, exempted by the prosecution and three blacks. So just based on that I don’t see a Batson problem.” Defense counsel then commented on the racial composition of the jury pool, stating, “If you have seventy-five percent white prospective jurors, Your Honor, and twenty-five percent black prospective jurors, now the schedule has turned and that’s exactly what we’ve had in three days of jury selection.” Defense counsel appeared to argue here not for the racially neutral exercise of peremptory challenges, but for the exercise of challenges in proportion to the overall racial division of the array. The trial judge then found no Batson violation, stating:
But that’s not the prosecution of the defense’s fault that we are getting largely white jurors. If that’s an issue, that’s another issue, and that can be dealt with another way.

But in this particular case and this particular matter, I do not see a pattern of the prosecution improperly excluding African American males, because they’ve only excluded one, or African American females where two have been excluded.

I think the reasons are acceptable. So I don’t see a problem there.

There’s still right now, I don’t know if this is going to end up being our jurors, but there are quite a few-I don’t know who’s left up there. But the fact that the composition of the jury panel is largely white, it’s like I said, another issue. And that can be dealt with in another way.
I deny the motion that the prosecution has improperly excluding [sic] minorities from the jury panel. [Emphasis added.]
The court then recessed for lunch. After lunch, the prosecutor dismissed three African-American women, *330 veniremembers Bonner, Johnson, and Jones. Defense counsel did not contemporaneously object to the exercise of peremptory challenges against veniremembers Bonner and Johnson. Defense counsel objected only to the dismissal of veniremember Jones, contending that the prosecutor was attempting to exclude black females in violation of Batson,[1] He pointed out that the prosecutor had exercised three consecutive challenges against African-American women. Without waiting for the trial judge’s ruling regarding whether a prima facie showing of purposeful discrimination had been made, the prosecutor immediately provided race-neutral reasons for the three exclusions, although defense counsel had not objected to the challenges regarding veniremembers Bonner and Johnson. The prosecutor stated that she dismissed veniremember Bonner because Bonner was a close relative of two persons convicted of first-degree murder. She dismissed veniremember Johnson because of Johnson’s body language, the tone of her voice, and the hesitant look she gave when she stated that she could be fair. Finally, she dismissed veniremember Jones because Jones was a professional woman who had a daughter close in age to the victim. The prosecutor noted that Jones’s daughter was not “similarly situated” to the victim and that Jones might compare and contrast the lifestyles of the victim and her daughter.
The trial judge responded by stating, “Just before we recessed for lunch, I thought that it was very clear that we didn’t have a problem here. But now I think we are getting very close to a sensitive issue.” The trial judge rejected the prosecutor’s reasons for dismissing venire *331 member Johnson, but stated that she had not objected to Johnson’s dismissal because defense counsel had not objected. The trial judge did not accept the prosecutor’s reasons for dismissing veniremember Jones:
The same thing with Miss Jones. I do not see a reason other than-I mean, it seems to me for the prosecution to say, she has a daughter the same age as the victim, that would seem to work in the prosecution’s favor, just in terms of thinking in the jury selection. So I don’t accept that.

I do see that we are getting close, and there are, I don’t know[,] two or three minority jurors left on this panel. So I think we are getting close to a serious issue here.

I wish that somebody had said something about keeping Miss Jones and Miss Johnson. And then we address this matter because I probably would not have excused either one of them. [Emphasis added.]
Defense counsel interrupted the trial judge at that point to clarify that Jones was the last veniremember struck and that he objected to the exclusion of Jones. Despite defense counsel’s comment, the trial judge stated, “[I]f an objection had been made as far as Miss Johnson and Miss Jones[,] I probably would have addressed it. And I tend to think I probably would have kept them on the jury.”[2]
The prosecutor then stated that dismissal was appropriate as long as she advanced race-neutral reasons for the dismissal. The trial judge replied that she had to either accept or reject the prosecutor’s “neutral” reasons. She further stated, “And I’m not, I’m saying that *332 I think we’re getting close to a sensitive issue here on Jones and Johnson. That’s all I’m saying. I’m making my record too.”
The trial judge twice referred to getting close to a “sensitive issue.” We do not think this language reflects that the sensitive issue was purposeful discrimination. Instead, we believe the sensitive issue was the looming absence of minorities in the array and on the petit jury.
The prosecutor acknowledged the trial judge’s comments. She immediately raised a reverse-Batson challenge to defense counsel’s exercise of peremptory challenges to exclude five female Caucasian veniremembers and one male Caucasian veniremember. Defense counsel again demonstrated his misunderstanding of Batson by stating:
I would indicate to the Court, Your Honor, that sister counsel fails to recognize that there are at least four white women that are on the jury.
I don’t believe with regards to the fact that they happen to be white women, I think the Court also has to recognize that the greatest number of people that have come through that jury, as potential jurors, have been in fact white people.[3]
*333 Defense counsel then requested that the trial judge first make a ruling regarding his Batson objection. The following colloquy ensued:
[Defense Counsel]-. But, I don’t think the Court ruled on whether or not you’re going to allow Miss Jones to be struck. She’s still downstairs, I’m sure.
[The Trial Judge]: I don’t know if she is or not.
[The Prosecutor]: I thought she was held.
[The Trial Judge]: If she is still here, I’m going to keep her.
[Defense counsel]: Thank you.
[The Deputy]: Miss Jones, she has already gone.
The trial judge then allowed defense counsel to make a record regarding the prosecutor’s revers e-Batson challenge, but never ruled on the challenge. Defense counsel responded by stating, “I believe the answer lies in the panel that’s left. There is no pattern . . . .” After further discussion, the trial judge concluded that any Batson problems that may have occurred were cured because African-American women were fairly represented on the jury panel. She stated:
I’m not satisfied with the prosecutor’s response as to potential juror Jones and Johnson. But I think they’ve already left.
So I’m going to say from this point on let’s be very careful about the selection. If you think that you, if the defense is not satisfied with me just giving a cautionary instruction to the prosecution, then I’ll address any other remedy.
But, realistically I think all of us are being, trying to be conscientious about the selection of these jurors because of the racial makeup of the jury panels, which we don’t have any control over.
*334 I’m just saying, I let Jones and Johnson go without holding them, especially Jones. I guess I should have held her and I didn’t do that. I’ll take the fault for that. But from this point on let’s try to be careful with this jury selection. We are to [sic] close to getting this jury selected. [Emphasis added.]
After sending the deputy to search for veniremember Jones again with no success, the trial judge stated, “I don’t think it is serious enough at this point. We do have some minorities left on the jury panel and I’ll be watching this closely.” Finally, at the end of jury selection, the trial judge commented:

With the panel we ended up with, I think that any Batson problems that may have been there have been cured.

We have the same number if not more jurors, African American female jurors on the panel as if we had kept [veniremember] Johnson and [veniremember] Jones.
I don’t think either side ended up selecting this panel for any other reason other than I think that these are the ones who will be the fair and impartial persons to hear and try this case. [Emphasis added.]
In the end, the jury convicted defendant Knight of first-degree murder and codefendant Rice of first-degree murder and felony-firearm.
Both defendants appealed as of right, and the Court of Appeals affirmed.[4] In defendant Knight’s case, the Court of Appeals found that the prosecutor presented adequate race-neutral reasons for excusing the prospective jurors and, thus, the trial court did not abuse its *335 discretion in rejecting defendant’s Batson challenge. While codefendant Rice’s counsel joined in the Batson challenge at trial, codefendant Rice did not raise the Batson issue in the Court of Appeals. Both defendants sought leave to appeal in this Court.
In lieu of granting leave to appeal, we vacated the judgments of the Court of Appeals and remanded for reconsideration in light of Batson, supra, and Miller-El v Cockrell, 537 US 322, 340; 123 S Ct 1029; 154 L Ed 2d 931 (2003) (Miller-El I).[5] On remand, the Court of Appeals again affirmed the convictions, finding no evidence of purposeful discrimination.[6] We granted leave to appeal and further ordered these cases to be argued and submitted together.[7]
II. LEGAL BACKGROUND
A. THE BATSON PROCEDURE
Under the Equal Protection Clause of the Fourteenth Amendment,[8] a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person’s race. Swain v Alabama, 380 US 202, 203-204; 85 S Ct 824; 13 L Ed 2d 759 (1965); see also Georgia v McCollum, 505 US 42; 112 S Ct 2348; 120 L Ed 2d 33 (1992); Edmonson v Leesville Concrete Co, Inc, 500 US 614; 111 S Ct 2077; 114 L Ed 2d 660 *336 (1991). In Batson, supra at 96-98, the United States Supreme Court announced a three-step process for determining the constitutional propriety of a peremptory challenge. '
First, thé opponent of the peremptory challenge must make a prima facie showing of discrimination. Id. at 96. To establish a prima facie case of discrimination based on race, the opponent must show that: (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. Id.[9] The United States Supreme Court has made it clear that the opponent of the challenge is not required at Batson’s first step to actually prove discrimination. Johnson v California, _ US _; 125 S Ct 2410; 162 L Ed 2d 129 (2005).[10] Indeed, “so long as the sum of the proffered *337 facts gives ‘rise to an inference of discriminatory purpose,’ ” Batson’s first step is satisfied. Id. at_US_; 125 S Ct 2416; 162 L Ed 2d 138 (internal citation omitted; emphasis added).
Second, if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike. Batson, supra at 97. Batson’s second step ‘‘does not demand an explanation that is persuasive, or even plausible.” Purkett v Elem, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995). Rather, the issue is whether the proponent’s explanation is facially valid as a matter of law. Id.; Hernandez v New York, 500 US 352, 360; 111 S Ct 1859; 114 L Ed 2d 395 (1991) (plurality opinion). “A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror.. .. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.” Id.
Finally, if the proponent provides a race-neutral explanation as a matter of law, the trial court must then *338 determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination. Batson, supra at 98. It must be noted, however, that if the proponent of the challenge offers a race-neutral explanation and the trial court rules on the ultimate question of purposeful discrimination, the first Batson step (whether the opponent of the challenge made a prima facie showing) becomes moot. Hernandez, supra at 359.
B. REVIEWING BATSON CLAIMS
Generally, we review a trial court’s factual findings for clear error. MCR 2.613(C). Further, we review questions of law de novo. People v Nickens, 470 Mich 622, 626; 685 NW2d 657 (2004). As a practical matter, however, appellate courts sometimes struggle with determining whether a particular issue presents a question of law or fact. In some instances, the line can become quite blurred. Batson error claims frequently appear to fall into the blurred category, and courts have labored to formulate a generally accepted standard of review for Batson cases that applies to all levels of the Batson inquiry. The cases at hand give us the opportunity to clarify our own standard for reviewing Batson errors. We conclude that the applicable standard of review depends on which Batson step is at issue before the appellate court.
1. DETERMINING WHAT THE TRIAL COURT HAS RULED
Before a reviewing court can determine which standard of review applies for purposes of Batson’s three steps, the court must first ascertain what the trial court actually ruled. When a trial court methodically adheres to Batson’s three-step test and clearly articulates its findings on the record, issues concerning what the trial *339 court has ruled are significantly ameliorated. See, e.g., United States v Castorena-Jaime, 285 F3d 916, 929 (CA 10, 2002). Not only does faithful adherence to the Batson procedures greatly assist appellate court review, but the parties, the trial court, and the jurors are well-served by thoughtful consideration of each of Bat-son’s steps as well. Thus, we observe that Batson, as a constitutional decision, is not discretionary. Our trial courts must meticulously follow Batson’s three-step test, and we strongly urge our courts to clearly articulate their findings and conclusions on the record.
In the event a trial court fails to clearly state its findings and conclusion on the record, an appellate court must determine on the basis of a fair reading of the record what the trial court has found and ruled. See, e.g., Mahaffey v Page, 162 F3d 481, 482-483 (CA 7, 1998). This is not the preferred route. Because of the importance of the right at stake, as well as the societal and judicial interests implicated, we again direct our trial courts to carefully follow each of Batson’s three steps, and we further urge the courts to clearly articulate their findings and conclusions with respect to each step on the record. Once it is determined what the trial court has found and ruled, the reviewing court must decide what Batson step is at issue in the particular case and how the claim of error should be reviewed.
2. STANDARD OF REVIEW FOR BATSON’S FIRST STEP
While there is somewhat of a consensus on the standards of review applicable to Batson’s second step, and the scope of review for the third step is well-settled, courts appear to be split with regard to the proper standard of review when examining Batson’s first step. For example, the Ninth Circuit Court of Appeals en banc concluded that a trial court’s determination *340 whether the opponent of the peremptory challenge made out a prima facie case of discrimination should be reviewed for clear error. Tolbert v Page, 182 F3d 677 (CA 9, 1999). In Tolbert, the Ninth Circuit concluded that Batson’s first step presented a mixed question of law and fact; however, the Tolbert court reasoned:
At the Batson prima facie showing step, the concerns of judicial administration tip in favor of the trial court and, therefore, a deferential standard of review prevails. Our conclusion is based on the language of Batson itself, which describes the prima facie analysis as a “factual inquiry,” Batson, 476 U.S. at 95, and makes clear that the trial court is to be the primary adjudicator of that analysis: “We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor’s use of peremptory challenges createf] a prima facie case of discrimination.” Id. at 97 (emphasis added).
Our holding is also consistent with more recent teachings of the Supreme Court, which counsel in favor of applying a deferential standard of review to certain mixed questions. See Salve Regina College v. Russell, 499 U.S. 225, 233, 111 S. Ct. 1217, 113 L Ed 2d 190 (1991). Deferential review is appropriate either “when it appears that the district court is ‘better positioned’ than the appellate court to decide the issue in question,” or when “probing appellate scrutiny will not contribute to the clarity of legal doctrine.” Id.Id. [Tolbert, supra at 682.]
When faced with the same question, however, the Seventh Circuit Court of Appeals concluded that a de novo standard applies to a trial court’s determination whether a prima facie showing of discrimination has been made. Mahaffey, supra at 484. The Seventh Circuit likewise observed that whether the facts alleged by the opponent of the peremptory challenge satisfied the opponent’s burden under Batson’s first step is a mixed question of law and fact. Id. Nonetheless, the Seventh *341 Circuit opined that “[t]he question of whether an inference of discrimination may be drawn from a set of undisputed facts relating to the racial makeup of the jury venire and the prosecutor’s exercise of peremptory challenges is.. . one over which the appellate courts should exercise a degree of control that a clear error standard would not afford.” Id. Moreover, in light of the importance of the constitutional right implicated, the Seventh Circuit reasoned that the de novo standard “would allow for a measure of consistency in the treatment of similar factual settings, rather than permitting different trial judges to reach inconsistent conclusions about the prima facie case on the same or similar facts.” Id. Thus, the Mahaffey Court concluded that the de novo standard of review applies to the prima facie showing of discrimination prong.
Similar to the Seventh Circuit, the Supreme Court of Colorado has also concluded that Batson’s first step is subject to review de novo. Valdez v People, 966 P2d 587, 591 (Colo, 1998). The Valdez court noted that the First, Eighth, and Ninth circuits adhere to a clear error standard when reviewing the prima facie determination under the Batson framework. However, the Colorado Supreme Court also observed that the Tenth Circuit Court of Appeals, as well as appellate courts in Kansas, Tennessee, and Utah, have concluded that Batson’s first step is subject to review de novo. Weighing the aforementioned cases and turning to Title VII case law for additional guidance, the Valdez court concluded:
Therefore, although we afford deference to the trial court’s ultimate determination of a Batson challenge in step three, we believe that the first step involves a question of legal sufficiency over which the appellate court must have plenary review. We continue to defer to the underlying factual findings, including any predicate credibility determinations of the trial court upon which its prima facie *342 determination under Batson is based. However, we hold that the question of whether the defendant has established a prima facie case under Batson is a matter of law, and we apply a de novo standard of review to a trial court’s prima facie determination of the Batson analysis. [Valdez, supra at 591.]
We agree with those jurisdictions that have concluded that Batson’s first step is appropriately categorized as a mixed question of law and fact. We, however, chose to follow Michigan’s well-established procedure of reviewing questions of law de novo and factual findings for clear error. People v McRae, 469 Mich 704, 710; 678 NW2d 425 (2004). We thus conclude that the first Batson step is a mixed question of fact and law that is subject to both a clear error (factual) and a de novo (legal) standard of review. A trial judge must first find the facts and then must decide whether those facts constitute a prima facie case of discrimination under Batson and its progeny.
We acknowledge that the United States Supreme Court has emphasized that the focus of Batson is not merely on the individual criminal defendant. See, e.g., Powers v Ohio, 499 US 400, 405-410; 111 S Ct 1364; 113 L Ed 2d 411 (1991). Rather, the focus is also on the integrity of the judicial system, as well as the rights of the prospective jurors. Id. at 410-414.[11] Unquestionably, ensuring the integrity of the judicial process and maintaining fair jury selection procedures are paramount concerns. However, these concerns do not persuade us that Batson’s first step should be treated any differently *343 than other mixed questions of law and fact. Indeed, we believe that these paramount concerns can be effectuated under our established rules for appellate review. Thus, until the United States Supreme Court holds otherwise, under Batson’s first step, we will review the questions of law de novo and the factual findings for clear error.
3. STANDARD OF REVIEW FOR BATSON’S SECOND STEP
While there appears to be some disagreement about the standard of review for Batson’s second step, we believe that those jurisdictions that have concluded that the second step is subject to review de novo have the better view. See, e.g., United States v Bishop, 959 F2d 820, 821 n 1 (CA 9, 1992); Hurd v Pittsburg State Univ, 109 F3d 1540, 1546 (CA 10, 1997); Valdez, supra at 590. We believe that such an approach is consistent with controlling United States Supreme Court precedent. See, e.g., Hernandez, supra at 359 (“In evaluating the race neutrality of an attorney’s explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law.”) (emphasis added).
It is important to bear in mind that it is not until Batson’s third step that the persuasiveness of the proffered explanation for the peremptory challenge becomes relevant. Purkett, supra at 768.[12] Accordingly, *344 at Batson’s second step, a court is only concerned with whether the proffered reason violates the Equal Protection Clause as a matter of law. See, e.g., United States v Uwaezhoke, 995 F2d 388, 392 (CA 3, 1993) (“Thus, if the government’s explanation does not, on its face, discriminate on the basis of race, then we must find that the explanation passes Batson muster as a matter of law, and we pass to the third step of Batson analysis to determine whether the race-neutral and facially valid reason was, as a matter of fact, a mere pretext for actual discriminatory intent.”). It is also important to bear in mind that only in rare cases is the proffered explanation facially invalid because such direct evidence is equally rare. We thus conclude that the de novo standard governs appellate review of Batson’s second step.
4. STANDARD OF REVIEW FOR BATSON’S THIRD STEP
It is well-settled that a trial court’s determination concerning whether the opponent of the peremptory challenge has satisfied the ultimate burden of proving purposeful discrimination is a question of fact that is reviewed for clear error. Hernandez, supra at 364-365; United States v Hill, 146 F3d 337, 341 (CA 6, 1998). Moreover, the trial court’s ultimate factual finding is accorded great deference. Miller-El I, supra at 340. The United States Supreme Court has observed that “[deference to trial court findings on the issue of discriminator intent makes particular sense in this context because . . . the finding ‘largely will turn on evaluation of credibility.’ ” Hernandez, supra at 365, quoting Batson, supra at 98 n 21. Accordingly, the “clear error” standard comports with the concept that assessment of credibility lies within the trial court’s province.[13] In accordance with well-settled law, we thus conclude that *345 the clear error standard governs appellate review of a trial court’s resolution of Batson’s third step.
5. SUMMARY OF BATSON STANDARD OF REVIEW
In sum, we conclude that the proper standard of review depends on which Batson step is before us. If the first step is at issue (whether the opponent of the challenge has satisfied his burden of demonstrating a prima facie case of discrimination), we review the trial court’s underlying factual findings for clear error, and we review questions of law de novo. If Batson’s second step is implicated (whether the proponent of the peremptory challenge articulates a race-neutral explanation as a matter of law), we review the proffered explanation de novo. Finally, if the third step is at issue (the trial court’s determinations whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination), we review the trial court’s ruling for clear error.
*346 C. REMEDIES FOR BATSON VIOLATIONS
In the present case, defense counsel did not object to the dismissal of veniremembers Bonner and Johnson. Although he referred to Bonner and Johnson during his Batson objection, he only objected to the dismissal of veniremember Jones. Therefore, in this case, the Bat-son objection only pertains to the dismissal of veniremember Jones. In order to ensure that a trial court remedies all purposeful discrimination, however, courts should apply the Batson objection to all strikes in an alleged pattern.
In order for a pattern of strikes to develop, several jurors might be struck without objection until a pattern begins to emerge. If a trial court allowed earlier strikes in a pattern to stand without taking remedial action, the court would potentially be allowing purposeful discrimination. Therefore, most jurisdictions do not consider a Batson objection waived if the prosecution fails to raise it immediately following the strike.
The case of State v Ford, 306 Mont 517, 523; 39 P3d 108 (2001), provided a thorough discussion of the rulings in different jurisdictions regarding Batson error preservation. Several jurisdictions held that a Batson challenge must be made before the jury is sworn, or else the issue is waived.[14] Additionally, numerous courts take the stance that a Batson challenge must also be raised before the court dismisses the venire.[15] One case *347 held that Batson objections were waived once the stricken veniremembers left the courthouse, but the court nonetheless underwent a Batson analysis for each of the discharged veniremembers in the pattern.[16]
There are several reasons why courts require a party to raise a Batson challenge before the venire is dismissed. First, the Batson objection warns the prosecutor, or the person peremptorily striking a juror, that he might be required to provide race-neutral explanations for the strike. United States v Erwin, 793 F2d 656 (CÁ 5, 1986). Furthermore, if a court finds a Batson violation after the venire is dismissed, then there must be a new jury-selection process and a new venire called. State v Cummings, 838 SW2d 4, 6 (Mo App, 1992). If a Batson challenge is made before the venire is discharged, however, the trial court can immediately correct the error and disallow the strike. See State v Parker, 836 SW2d 930 (Mo, 1992).
Therefore, in order to preserve the option of reseating improperly stricken jurors, the court in Parker suggested that “[t]rial courts should refrain from releasing venirepersons who have been peremptorily struck until the venire is excused.” Id. at 936 n 3.
*348 Requiring courts to retain stricken jurors until the end of jury selection, however, could potentially burden trial courts and citizens called in for jury service if the selection process lasts several days. Because of the difficulties in retaining stricken jurors, this Court concludes that a Batson challenge is timely if it is made before the jury is sworn. It must be noted, however, that if stricken veniremembers are dismissed and later found to be part of a pattern of discriminatory strikes, the only remaining remedy for the Batson violation would be to discharge the entire venire and start the process anew. A court may not ignore or fail to remedy the prior improper strikes simply because the court already dismissed the veniremembers.
In the present case, the prosecutor provided race-neutral explanations for her exclusion of veniremembers Bonner and Johnson, even though defense counsel did not specifically object to their dismissals. The trial judge stated that she was not “satisfied with the prosecutor’s response as to potential juror Jones and Johnson,” but because they already left, she did not rule on whether the prosecutor engaged in purposeful discrimination. Instead, she instructed the attorneys to be careful “from this point on” with their selections. If the judge had found a Batson error, however, her only remedial option would have been to dismiss the entire venire and select the jury from a new panel because she had already dismissed the stricken veniremembers.
III. ANALYSIS
The record reflects that the trial judge never explicitly found that the prosecutor violated Batson. Nor can we infer such a finding on this record. Instead, the record is susceptible to the fair inference that the trial judge acted to preserve the presence of minority jurors *349 on the panel, knowing that the jury pool, as a matter of chance, was largely Caucasian. Protecting a defendant’s right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury.[17] The goal of Batson and its progeny is to promote racial neutrality in the selection of a jury and to avoid the systematic and intentional exclusion of any racial group. Taylor v Louisiana, 419 US 522, 538; 95 S Ct 692; 42 L Ed 2d 690 (1975); Holland v Illinois, 493 US 474, 476-480; 110 S Ct 803; 107 L Ed 2d 905 (1990).
As a threshold matter, we must note that our task in resolving these cases is difficult, in large part, because of the trial judge’s failure to rigorously follow the Batson procedures and, more importantly, to clearly articulate her findings and conclusions on the record. Therefore, under these circumstances, we must fairly read the record to determine exactly what the trial judge found and concluded in light of defendants’ Batson objections.
On the basis of our reading of the voir dire transcripts, we conclude that the trial court did not, in fact, find a Batson violation and, thus, there is no error to complain of in these cases. The trial judge’s initial *350 expression of dissatisfaction with the prosecutor’s race-neutral reasons, when considered in context with her subsequent remarks that “we are getting close to a sensitive issue,” related to her concern about the number of minority veniremembers left on the panel. The judge further articulated her actual motivation in the following excerpt: “I think all of us are being, trying to be conscientious about the selection of these jurors because of the racial makeup of the jury panels, which we don’t have any control over.” The triál judge’s remarks do not reflect a finding that the prosecutor engaged in purposeful discrimination. Rather, the comments demonstrate that her true motivation was to ensure some modicum of racial balance in the jury panel. Use of peremptory challenges, however, to ensure racial proportionality in the jury is prohibited by Batson and will be prohibited by proposed MCR 6.412(F) if adopted.[18]
The trial judge never expressly found that the prosecutor exercised peremptory challenges for a racially discriminatory reason. In fact, her comments at the end of jury selection suggest a contrary conclusion. The trial judge was more concerned with achieving a proportionate racial composition on the jury than with the exclusion of veniremember Jones. She ultimately concluded that no Batson violation existed because a satisfactory number of African-American females were still present on the jury.
We reject Justice CAVANAGH’s conclusion that the trial judge ever found that defense counsel met his burden of *351 proving purposeful discrimination. Rather, the trial judge’s focus, as her comments reflect, was to ensure that the racial composition of the jury remained proportionate.
The purpose of Batson is to prevent discriminatory exclusions of veniremembers on the basis of race or gender. Here, the jury pool, by chance, contained a greater number of Caucasians than African-Americans. The trial judge was preoccupied with this fact. Her Batson analysis seemed to be infused with and confused by the erroneous belief that Batson is violated if the challenge resulted in too few minority jurors. The trial judge’s statements did not imply that she would have kept Jones and Johnson on the jury because she thought they had been wrongfully excluded on the basis of race. Rather, her statements implied that she would have kept them on the jury to ensure that the number of African-American jurors remained proportionate to the number of Caucasian jurors.
The trial judge failed to recognize that a defendant is not entitled to a jury of a particular racial composition as long as no racial group is systematically and intentionally excluded. Taylor, supra at 538; Holland, supra at 476-480.[19] Defendants’ jury was drawn from a fair cross section of the community. Nor was any racial group systematically excluded.
*352 IV CONCLUSION
On the basis of our reading of the voir dire transcripts, -we hold no Batson violation occurred in this case and the trial judge neither explicitly nor implicitly found such a violation. Giving the appropriate degree of deference to the trial judge’s ultimate finding that the prosecutor did not engage in purposeful discrimination, we affirm defendants’ convictions.
WEAVER, Young, and Markman, JJ., concurred with Corrigan, J.

 Veniremember Jones, believing that she was dismissed, left the courthouse before the trial judge ruled on defense counsel’s Batson objection.

 It is not clear from the record whether the trial judge mistakenly referred to veniremember Bonner as veniremember Jones, or truly believed that an objection had not been made regarding veniremember Jones’s dismissal.

 Justice Cavanagh claims that defense counsel’s objections did not demonstrate his misunderstanding of Batson. Rather, he states that defense counsel’s comments amount to an attempt to establish a prima facie case of purposeful discrimination by asserting that the prosecutor had engaged in a pattern of systematically excluding African-American veniremembers. We disagree. The record, when read as a whole, clearly demonstrates that defense counsel’s Batson objections were made to prevent the prosecutor from excluding any African-American veniremembers, even if the prosecutor provided race-neutral reasons for doing so, because the majority of the veniremembers, by chance, was Caucasian.

 People v Knight, unpublished opinion per curiam of the Court of Appeals, issued October 15, 2002 (Docket No. 231845); People v Rice, unpublished opinion per curiam of the Court of Appeals, issued October 15, 2002 (Docket No. 225865). Both defendants assigned numerous claims of error, but only the Batson issue is relevant for purposes of these appeals.

 People v Knight, 468 Mich 922 (2003); People v Rice, 468 Mich 922 (2003).

 People v Knight (On Remand), unpublished opinion per curiam of the Court of Appeals, issued October 7, 2003 (Docket No. 231845); People v Rice (On Remand), unpublished opinion per curiam of the Court of Appeals, issued October 7, 2003 (Docket No. 225865).

 470 Mich 869 (2004).

 US Const, Am Xiy § 1 provides in relevant part: “No State shall... deny to any person within its jurisdiction the equal protection of the laws.”

 In Swain, supra at 223-224, the United States Supreme Court required the defendant to show that the prosecution had a practice or pattern of using peremptory challenges in “case after case.” In Batson, supra at 92-93, however, the Court sought to alleviate Swain’s “crippling burden of proof” and eliminated the requirement that the defendant make a prima facie showing by reference to other cases. Further, it must be observed that the striking of even a single juror on the basis of race violates the Constitution. See, e.g., J E B v Alabama ex rel T B, 511 US 127, 142 n 13; 114 S Ct 1419; 128 L Ed 2d 89 (1994) (“The exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system.”). See also United States v Clemons, 843 F2d 741, 747 (CA 3, 1988), cert den 488 US 835 (1988); United States v Lane, 866 F2d 103, 105 (CA 4, 1989); United States v Battle, 836 F2d 1084, 1086 (CA 8, 1987); United States v Vasquez-Lopez, 22 F3d 900, 902 (CA 9, 1994); United States v David, 803 F2d 1567, 1571 (CA 11, 1986).

 In Johnson, the United States Supreme Court addressed California’s approach to examining Batson’s first step. While the Court recognized that the states have some degree of flexibility in formulating appropriate *337 procedures to comply with Batson, the Court concluded that California’s approach was inappropriate. Id.,_US_; 125 S Ct 2416; 162 L Ed 2d 138. The California Supreme Court had concluded that at Batson’s first step, the opponent of the challenge must present strong evidence that makes discriminatory intent more likely than not. The United States Supreme Court rejected this approach, observing:
We did not intend [Batson’s] first step to be so onerous that a defendant would have to persuade the judge — on the basis of all the facts, some of which are impossible for the defendant to know with certainty — that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. [Id.,_US_; 125 S Ct 2417; 162 L Ed 2d 139.]

 See also Herman, Why the court loves Batson: Representation-Reinforcement, colorblindness, and the jury, 67 Tul L R 1807,1814-1815 (1993) (“A criminal defendant is permitted to raise Batson challenges not on the theory that his or her own rights have been violated, but rather on the theory that he or she is being afforded standing to raise the rights of a third party — the prospective juror.”).

 See also Johnson, supra,_US_; 125 S Ct 2417-2418; 162 L Ed 2d 140, quoting Purkett, supra at 768 (“The first two Batson steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant’s constitutional claim. ‘It is not until the third step that the persuasiveness of the justification becomes relevant —the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.’ ”).

 See, e.g., Miller-El I, supra at 339-340 (internal citations omitted):
*345 Credibility can be measured by, among other factors,... demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.
“Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding ‘largely will turn on evaluation of credibility.’ In the typical peremptory challenge inquiry, the decisive question will be whether counsel’s race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best'evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor’s state of mind based on demeanor and credibility lies ‘peculiarly within a trial judge’s province.’ ”

 See State v Wilson, 117 NM 11; 868 P2d 656 (NM App, 1993); United States v Cashwell, 950 F2d 699, 704 (CA 11, 1992); United States v Dobynes, 905 F2d 1192, 1196 (CA 8, 1990). See also People v Hudson, 157 Ill 2d 401; 626 NE2d 161 (1993).

 See United States v Biaggi, 909 F2d 662, 679 (CA 2, 1990); Government of Virgin Islands v Forte, 806 F2d 73, 76 (CA 3, 1986); Morning v Zapata Protein (USA), Inc, 128 F3d 213, 216 (CA 4, 1997); United States v Abou-Kassem, 78 F3d 161, 167 (CA 5, 1996); United States v Rodriguez, *347 917 F2d 1286, 1288 (CA 11, 1990); State v Cummings, 838 SW2d 4 (Mo App, 1992); Sorensen v State, 6 P3d 657, 662 (Wy, 2000); State v Harris, 157 Ariz 35, 36; 754 P2d 1139 (1988).

 In State v Jacobs, 803 So 2d 933 (La, 2001), the Louisiana Supreme Court held that the objections to the first three jurors were untimely, and thus waived, because “the jurors were no longer ‘under any instructions’ in the case.” Id. at 939. The reason why Jacobs might not be easily applicable to other cases, however, is that the judge “effectively collapsefd] the first two stages of the Batson procedure ... [and performed] the crucial third step of weighing the defendant’s proof and the prosecutor’s race-neutral reasons to determine discriminatory intent.” Id. at 941. Therefore, although the judge claimed that the objection was untimely, he nonetheless undertook a Batson analysis and determined that there were race-neutral reasons for the jurors’ dismissals.

 See, for example, a recent proposal to amend MCR 6.412. This proposed court rule would expressly prohibit the use of peremptory challenges to achieve a racially proportionate jury. It states:
(F) Discrimination in the Selection Process.
(1) No person shall be subjected to discrimination during voir dire on the basis of race, color, religion, national origin, or sex.
(2) Discrimination during voir dire on the basis of race, color, religion, national origin, or sex for the purpose of achieving what the court believes to be a balanced, proportionate, or representative jury in terms of these characteristics shall not constitute an excuse or justification for a violation of this subsection. [See Michigan Bar Journal, June 2005, p 64.]

 Justice CAVANAGH states that we rely on the above proposed court rule to support the proposition that the use of peremptory challenges to ensure racial proportionality in the jury is prohibited. We do not rely on the proposal to support this proposition. Rather, we cite to it to show that this Court is considering steps to prevent such problems from occurring in the future.

 See also United States v Ovalle, 136 F3d 1092, 1107 (CA 6, 1998), in which the United States Court of Appeals for the Sixth Circuit struck down the Eastern District of Michigan’s jury selection plan, which utilized the “subtraction” method of balancing the jury pool to ensure proportional representation of various racial groups within the community. It held, “The selection of the grand and petit juries from a qualified jury wheel that was derived through racially discriminatory means, and the fact that the Jury Selection Plan was not narrowly tailored to meet any compelling governmental interest, constitute grounds for reversal of the defendants’ convictions.”