*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FEDRICO GENALDO SIMON,

        Defendant-Appellant.

UNPUBLISHED
September 02, 2025
1:58 PM

No. 363921
Genesee Circuit Court
LC No. 2021-047957-FC

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of second-degree murder, MCL 750.317. The trial court sentenced defendant to serve 36 to 80 years in prison. We reverse and remand for a new trial.

## I. FACTS

This case arises out of the murder of the victim in February 2019. After a four-day trial, defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

## II. *BATSON* VIOLATION

On appeal, defendant argues that the circuit court erred by finding that the prosecutor's peremptory removal of three black prospective jurors was not racially motivated. We agree.

### A. PRESERVATION AND STANDARD OF REVIEW

To properly preserve a *Batson*[1] challenge, the challenge must be raised before the jury is sworn. *People v Knight*, 473 Mich 324, 346-348; 701 NW2d 715 (2005). In this case, defense

---

[1] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

counsel raised a *Batson* challenge during jury selection; therefore, this issue is preserved for appellate review. See *id*.

We review a trial court's factual findings for clear error and questions of law de novo. *Id*. at 338. "[T]he applicable standard of review depends on which *Batson* step is at issue before the appellate court." *Id*. "If the first step is at issue (whether the opponent of the challenge has satisfied his burden of demonstrating a prima facie case of discrimination), we review the trial court's underlying factual findings for clear error, and we review questions of law de novo." *Id*. at 345. "If *Batson*'s second step is implicated (whether the proponent of the peremptory challenge articulates a race-neutral explanation as a matter of law), we review the proffered explanation de novo." *Id*. "Finally, if the third step is at issue (the trial court's determinations whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination), we review the trial court's ruling for clear error." *Id*. Notably, "the trial court's ultimate factual finding is accorded great deference" in this context. *Id*. at 344.

## B. *BATSON* PROCEDURE

"Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race." *Id*. at 335 (citation omitted). "Protecting a defendant's right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury." *Id*. at 349. "The goal of *Batson* and its progeny is to promote racial neutrality in the selection of a jury and to avoid the systematic and intentional exclusion of any racial group." *Id*. Accordingly, in *Batson v Kentucky*, 476 US 79, 96-98; 106 S Ct 1712; 90 L Ed 2d 69 (1986), the United States Supreme Court announced a three-step process for analyzing a peremptory challenge on these grounds.

"First, the opponent of the peremptory challenge must make a prima facie showing of discrimination." *Knight*, 473 Mich at 336. "To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 US at 96 (citation omitted). "Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." *Id*. (quotation marks and citation omitted). "Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id*. "The United States Supreme Court has made it clear that the opponent of the challenge is not required at *Batson*'s first step to actually prove discrimination." *Knight*, 473 Mich at 336. Therefore, *Batson*'s first step is satisfied if the sum of the proffered facts give rise to an *inference* of discriminatory purpose. *Id*. at 336-337.

"Second, if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *Id*. at 337. "*Batson*'s second step does not demand an explanation that is persuasive, or even plausible. Rather, the issue is whether the proponent's explanation is facially valid as a matter of law." *Id*. (quotation marks and citation omitted). "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror . . . . Unless

a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id*. (quotation marks and citation omitted; alteration in original).

"Finally, if the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination." *Id*. at 337-338. "It must be noted, however, that if the proponent of the challenge offers a race-neutral explanation and the trial court rules on the ultimate question of purposeful discrimination, the first *Batson* step (whether the opponent of the challenge made a prima facie showing) becomes moot." *Id*. at 338.

## C. ANALYSIS

As voir dire was winding down in this case, defense counsel requested to make an argument outside of the jury's presence, which the trial court allowed. Defense counsel explained that the prosecutor had used seven peremptory challenges, three of which were used to excuse black jurors: Jurors 3, 7, and 14. Defense counsel explained that "close to 50%" of the peremptory challenges were "against the black population" in violation of *Batson*. Accordingly, defense counsel requested that the prosecutor be denied his last peremptory challenge on Juror 7. The prosecutor acknowledged that it was his "burden to show some non-race reasons for each of [his] peremptory challenges," which he did. The trial court ultimately denied the *Batson* challenge.

As a preliminary matter, because the trial court ruled on the ultimate question of purposeful discrimination as to Jurors 3, 7, and 14, the first *Batson* step (whether the opponent of the challenge made a prima facie showing) is moot and need not be analyzed. *Id*. at 338. Similarly, the second *Batson* step is not at issue because the prosecutor acknowledged that it was his "burden to show some non-race reasons for each of [his] peremptory challenges," which he offered. Therefore, the relevant inquiry in this case concerns *Batson*'s third step.

On appeal, defendant asserts that the prosecution's explanation for striking Juror 7 was "the most egregious example of pretext in this case" because the explanation entirely relied on Juror 7's demeanor. We agree.

The prosecutor provided the following explanation for striking Juror 7:

> Juror number seven, though he answered questions and seemed to engage while he was up in the jury pool, throughout the process he has been disengaged and (inaudible) in the back and I got the same impression while he was up here that he was not enthused to be here and I think I am allowed to dismiss him for that purpose.

When denying defense counsel's *Batson* challenge as to Juror 7, the trial court reasoned as follows: "You know, with regard to [Juror 7], the explanation, I understand that explanation. I don't necessarily—I mean, again, I'm not trying to make a determination as to whether I agree with it, but I do understand—from the observations, I understand when the observations were made."

"When a prosecutor's sole explanation for a strike resides in a juror's appearance or behavior, the third step bears heightened significance. Explanations for peremptory challenges based solely on a juror's demeanor are particularly susceptible to serving as pretexts for

discrimination." *People v Tennille*, 315 Mich App 51, 65; 888 NW2d 278 (2016) (quotation marks and citation omitted). "Nonverbal conduct or demeanor, often elusive and always subject to interpretation, may well mask a race-based strike. For that reason, trial courts must carefully examine such rationales." *Id*. (quotation marks and citation omitted). "[B]ecause such after-the-fact rationalizations are susceptible to abuse, a prosecutor's reason for discharge bottomed on demeanor evidence deserves particularly careful scrutiny." *Id*. (quotation marks and citations omitted). "In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder v Louisiana*, 552 US 472, 477; 128 S Ct 1203; 170 L Ed 2d 175 (2008). The United States Supreme Court has "recognized that these determinations of credibility and demeanor lie peculiarly within a trial judge's province, and . . . that in the absence of exceptional circumstances, we would defer to" the trial court. *Id*. (quotation marks and citations omitted).

In this case, the trial court stated that he understood *when* the prosecutor's observations regarding Juror 7's demeanor were made, but the trial court erred in not determining "whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id*. at 477.

The evidence in this case tends to disprove the prosecutor's rationale. For example, the prosecutor acknowledged that Juror 7 was engaged while he was in the jury box, but argued that he was disengaged while waiting in the back of the room. But, Juror 7 acknowledged that he had heard all the questions that were asked before he was called to the jury box. Moreover, when he was presented with the prosecutor's ongoing hypothetical regarding what direct or indirect information Juror 7 would need to be convinced that the prosecutor was an attorney, Juror 7 stated, "I knew you were going to ask that," and proceeded to say that he was convinced that the prosecutor was an attorney because of what the prosecutor had proved throughout the day. These answers directly contradicted the prosecutor's statement that Juror 7 was disengaged before he entered the jury box.

Defendant further argues that "[t]he prosecutor's failure to question Juror 7 in any way about his enthusiasm for or attention to the proceedings is evidence this explanation was a pretext for discrimination." See *Miller-El v Dretke*, 545 US 231, 250 n 8; 125 S Ct 2317; 162 L Ed 2d 196 (2005) ("[T]he failure to ask undermines the persuasiveness of the claimed [race-neutral] concern."). We agree. Because the record indicates that Juror 7 had been paying attention throughout the day, the prosecutor's failure to make a record regarding his concern with Juror 7's inattention undermines the persuasiveness of the prosecutor's claim. See *id*.

Taken together, the trial court failed to determine whether Juror 7's demeanor could credibly be said to have exhibited the basis for the strike, and the record evidence disproves the prosecutor's rationale in this case. See *Snyder*, 552 US at 477. Therefore, the trial court clearly erred by finding that the prosecutor provided a racially neutral explanation for his peremptory challenge regarding Juror 7. Because the trial court committed clear error in overruling defendant's *Batson* objection with respect to Juror 7, we remand this case for a new trial. See *People v Yarbrough*, 511 Mich 252, 272; 999 NW2d 373 (2023) ("As this right would be virtually immunized from appellate protection by the application of the harmless-error standard, we conclude that automatic reversal is the appropriate remedy for the erroneous denial of a defendant's

peremptory challenge when the error is preserved and no curative action is taken."). Accordingly, we need not examine defendant's *Batson* objection concerning Jurors 3 and 14. See *Id*. at 478 ("The Constitution forbids striking even a single prospective juror for a discriminatory purpose . . . .") (quotation marks, citations, and alteration omitted).

Because this issue is outcome determinative, we need not reach defendant's other issues on appeal concerning insufficient evidence or ineffective assistance of counsel.

### III. CONCLUSION

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney