*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 12, 2026
1:51 PM

Plaintiff-Appellee,

v

No. 372718
Wayne Circuit Court
LC No. 23-005956-01-FC

USAMAH ABDUL RAHEEM CARSWELL,

Defendant-Appellant.

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

Defendant, Usamah Carswell, appeals as of right his jury-trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This case arises from Carswell's sexual assault of BO. At the time BO was fifteen years of age and had run away from home. She testified that she stayed with her boyfriend's grandmother for a few days and then stayed overnight at a friend's house. Her friend's father, a man known as "Tattoo," told her to leave the next day. BO explained that she then got into a gold-colored vehicle with Tattoo and Carswell.

According to BO, Carswell drove to a self-serve carwash. BO testified that they smoked "weed" and "small crystal-like type things." Afterward, Carswell told her to get into the backseat and followed her back. He told her to take off all of her clothing and had penile-vaginal intercourse with her, which resulted in him ejaculating. He also touched and kissed her from the top of her breasts to her thighs. BO was unable to say "a single word" during the assault.

Carswell drove BO to a park, and she walked home. BO took a shower, disclosed the abuse to her sister, and was taken to the hospital for an examination by a sexual assault nurse examiner. Forensic evidence showed "very strong support" that Carswell contributed to the DNA that was located on a swab of BO's breasts. There was also "very strong support" that Carswell had contributed DNA to the swabs taken from her anal and perineal areas. At trial, Carswell denied

-1-

meeting BO or sexually assaulting her.  The jury convicted him of CSC-III, but acquitted him of the remaining charges.[1]

## II.  LIMITATION ON JURY SELECTION

### A.  STANDARD OF REVIEW

The trial court advised the prosecution and the defense that they would each have 30 minutes to conduct voir dire.  Carswell argues that the time limitation violated his constitutional right to an impartial jury.  We review de novo a challenge to the jury selection process.  *People v Fletcher*, 260 Mich App 531, 554; 679 NW2d 127 (2004).  However, in order to preserve an issue of jury selection, the defendant must either exhaust all of his or her preemptory challenges or refuse to express satisfaction with the jury.  *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992).  Here, Carswell did not exhaust his preemptory challenges and did not refuse to express satisfaction with the jury.  Accordingly, the issue is unpreserved.  Unpreserved issues are reviewed for plain error affecting the defendant's substantial rights.  *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

### B.  ANALYSIS

"[A] trial court has discretion in both the scope and the conduct of voir dire."  *People v Washington*, 468 Mich 667, 674; 664 NW2d 203 (2003) (quotation marks and citation omitted).  "A defendant does not have a right to have counsel conduct the voir dire."  *Id*. at 674 (quotation marks and citation omitted).  "However, a trial court may not restrict voir dire in a manner that prevents the development of a factual basis for the exercise of peremptory challenges."  *People v Taylor*, 195 Mich App 57, 59; 489 NW2d 99 (1992) (quotation marks and citation omitted).

Carswell argues that, by limiting his lawyer's time to conduct voir dire, the trial court prevented him from developing a factual basis regarding the jurors' attitudes toward allegations of sex offenses with a minor.  We disagree.  Before voir dire commenced, the trial court advised the parties that it would ask the jurors preliminary questions and that they would each be afforded 30 minutes to question the jurors.  Thereafter, the court questioned the jurors extensively regarding their marital status, their professions and the professions of their spouses, and whether they had any children.  The court also questioned them regarding their education and any religious or philosophical beliefs they might hold that would affect their partiality.  Questions were also asked regarding whether the jurors or their close friends and family were or had any relationship to lawyers, judges, or law enforcement; their prior juror experiences, including whether they had served on criminal or civil cases, whether they reached a verdict, and, if so, whether they were the foreperson; whether they were the victims or perpetrators of crimes and details related to such disclosures.  The prosecutor then asked a number of questions related to the burden of proof, the nature of evidence, the evidentiary proof needed for a criminal sexual abuse conviction, and how

---

[1] Carswell was acquitted of first-degree criminal sexual conduct, MCL 750.520b(1)(c), distribution of a controlled substance to a minor, MCL 333.7410(1), two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(c), and distribution of marihuana to a minor, MCL 333.7401(2)(d)(*iii*) and MCL 333.7410(1).

to judge the credibility of witnesses, including child witnesses. Finally, the defense lawyer asked multiple questions relating to the presumption of innocence, the locations involved in the allegations against Carswell, and the juror's attitudes toward criminal sexual abuse involving a teenage victim. As jurors were excused peremptorily or for cause, the court, the prosecutor, and the defense lawyer would repeat their questions, following up with the jurors as necessary. Eventually, both parties expressed that they were not seeking to excuse any further jurors. Notably, there is no indication that the 30-minute time limit expired prior to the defense expressing satisfaction. Moreover, during at least one round of questioning, the defense lawyer sought permission from the court to ask additional questions, and the court granted him permission to do so. Given the record in this case, the court's decision to limit voir dire to 30 minutes of questions per party did not prevent the development of a factual basis for the parties to exercise preemptory challenges. See *Taylor*, 195 Mich App at 59. Reversal is, therefore, not warranted.

## III. *BATSON*[2] CHALLENGE

### A. STANDARD OF REVIEW

Carswell next argues that the prosecution's preemptory exclusion of three prospective African-American jurors was racially motivated. This Court generally reviews de novo questions of constitutional law. *People v Johnson*, 340 Mich App 531, 542; 986 NW2d 672 (2022). And we review a trial court's ruling on a *Batson* challenge for an abuse of discretion. *People v Ho*, 231 Mich App 178, 184; 585 NW2d 357 (1998). However, "a trial court's determination concerning whether the opponent of the peremptory challenge has satisfied the ultimate burden of proving purposeful discrimination is a question of fact that is reviewed for clear error." *People v Knight*, 473 Mich 324, 344; 701 NW2d 715 (2005).

### B. ANALYSIS

A defendant's right to equal protection is violated when a party exercises a peremptory challenge to exclude a prospective juror based solely on their race. US Const, Am XIV, § 1; *Batson v Kentucky*, 476 US 79, 86; 106 S Ct 1712; 90 L Ed 2d 69 (1986). We use a three-step process to determine whether a peremptory challenge was based on purposeful racial discrimination. *Knight*, 473 Mich at 336. "First, the opponent of the peremptory challenge must make a prima facie showing of discrimination." *Id*. "Second, if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike." *Id*. at 337. "Finally, if the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination." *Id*. at 337-338.

---

[2] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

During voir dire, Carswell's lawyer raised a challenge to the prosecution's use of preemptory challenges. Carswell's lawyer argued:

> Of course, my client is African American and we had five African American jurors and the prosecutor just excused three of them, three in a row and I would make a challenge pursuant to People versus Batson on that. Why she excused three out of five African American on a panel and she excused three in a row, three together.

In response, the prosecutor explained:

> Judge, the reason I kicked juror number one was his indication of a friend of his that had been wrongfully convicted.
>
> My reason for kicking juror number ten was the indication that she has a nephew in prison for the exact same crime.
>
> My reasoning for kicking juror number twelve was when he was talking about his conviction it gave me the impression that he thinks some crimes are not important or frivolous, so that's why I excused him.

Based upon the foregoing, the parties agree that Carswell made a prima facie showing of discrimination and that the prosecution articulated a race-neutral explanation for the exercise of the preemptory challenges. Thus, the sole issue on appeal is whether the trial court clearly erred by determining that the race-neutral explanations were not pretextual.

Carswell argues that the prosecutor's explanation for the strikes was based upon the prospective jurors' demeanors. "Explanations for peremptory challenges based solely on a juror's demeanor are particularly susceptible to serving as pretexts for discrimination." *People v Tennille*, 315 Mich App 51, 65; 888 NW2d 278 (2016) (quotation marks and citation omitted). "Nonverbal conduct or demeanor, often elusive and always subject to interpretation, may well mask a race-based strike. For that reason, trial courts must carefully examine such rationales." *Id*. (quotation marks and citation omitted). "[B]ecause such after-the-fact rationalizations are susceptible to abuse, a prosecutor's reason for discharge bottomed on demeanor evidence deserves particularly careful scrutiny." *Id*. (quotation marks and citations omitted). With these legal principles in mind, we examine in turn each of the prospective jurors struck by the prosecution.

Juror One disclosed that he had family and friends in jail. When asked if they were treated fairly, he stated that one of those individuals had not been treated fairly. Juror One explained that the person "didn't do it," had served 16-and-a-half years, and was only prosecuted "because he was around the area." The prosecutor elected to strike Juror One based upon his belief that his friend was wrongfully convicted. That decision was based upon Juror One's answer to the questions, not upon his demeanor and nonverbal conduct. The trial court found that the prosecutor's reason for the strike was not a pretext for discrimination and that it was instead a legitimate reason for striking the prospective juror. That finding was not clearly erroneous given the record before this Court.

Next, Juror Ten stated that her nephew was in prison for criminal sexual conduct. The prosecutor stated that she had struck her from the jury for that reason. The decision to strike was not based upon any nonverbal conduct or demeanor. Rather, it was based upon her familial relationship with someone who had been convicted of the same class of offense as Carswell was charged with committing. The trial court found that the reason for striking the juror was legitimate and was not pretextual. In light of the record, we conclude that the court's finding was not clearly erroneous.

Finally, Juror Twelve informed the court that he had been convicted of "bouncing" a check when he was a teenager. He stated that he had not been treated fairly. When asked to elaborate, he explained:

> First of all, it was my own check. I did not know my amounts [sic] was not sufficient to cover the cost of the grocery shopping and I was sentenced for that, three days to serve jail time. If the circumstance was different, I would have, you know, just slap on the wrist and probably, you know, pay the amount of the money that caused (inaudible). Learned from my mistake instead of being sent to jail for that.

The prosecutor stated that, based upon the response, she got the impression that Juror Twelve believed that some offenses were not important or were somehow frivolous. Once again, the prosecutor's decision to strike the juror was based upon the juror's answers to the questions posed and the inferences she drew from those responses. It was not based upon any nonverbal conduct or demeanor. Given that it is reasonable to infer from the juror's response that he felt some crimes were less important, the prosecutor's stated reason is supported by the record. We do not find clearly erroneous the trial court's finding that the reasons stated was legitimate and not a pretext for discrimination.

Nevertheless, Carswell argues that each explanation for striking the jurors was pretextual because each prospective juror indicated that their ability to be fair and impartial was not impacted. Yet, it is clear that if the jurors indicated an inability to be impartial or fair there would have been grounds to dismiss them for cause. See MCR 6.412(D)(1); MCR 2.511(E). It is axiomatic that there is no requirement that a preemptory challenge can only be exercised if the juror indicates an inability to be fair or impartial. Moreover, we do not find persuasive Carswell's speculation that the dismissal must have been racially-motivated given the lack of for-cause reasons to strike the juror.

In sum, we conclude that the trial court did not err by finding that the reasons for dismissing the three prospective jurors were legitimate and did not demonstrate purposeful racial discrimination. Carswell is, therefore, not entitled to relief on this basis.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young

-5-