# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LANCE SMALLEY ROGERS,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2015

No. 319726
Wayne Circuit Court
LC No. 13-002481-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMIL LAKIM BRIGGS-CODY,

        Defendant-Appellant.

No. 319985
Wayne Circuit Court
LC No. 13-002482-FC

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendants ask us to overturn their jury trial convictions for various criminal offenses, including murder. For the reasons stated below, we reject their appeals and affirm their convictions.

## I. FACTS AND PROCEDURAL HISTORY

The prosecution charged defendants with the murder of a young college student during an attempted robbery in Detroit, and they were tried together before a jury in the Wayne Circuit

---

[1] Our Court consolidated defendants' appeals for administrative reasons. See *People v Rogers*, unpublished order of the Court of Appeals, entered February 12, 2015 (Docket Nos. 319726, 319985).

Court. After hearing testimony from two other victims of the robbery, eyewitnesses, police officers, and federal agents, the jury convicted defendant Rogers of first-degree, premeditated murder under MCL 750.316(1)(a), and possession of a firearm during commission of a felony (felony-firearm) under MCL 750.227b. It convicted defendant Briggs-Cody of second-degree murder under MCL 750.317, and felony-firearm under MCL 750.227b.

On appeal, defendant Rogers argues that he was denied a fair trial because: (1) black individuals were supposedly purposely excluded from the jury[2]; (2) the trial court admitted other acts evidence in violation of MRE 404(b). Rogers also says his judgment of sentence must be amended because his sentence for felony-firearm was "erroneously imposed" consecutively with his conviction for murder. Defendant Briggs-Cody claims that the trial court violated his right to due process when it refused to suppress witness testimony identifying him as one of the murderers. He also asserts that his trial counsel gave him ineffective assistance.

## II. ANALYSIS

## A. ROGERS' APPEAL

## 1. JURY SELECTION

Cases where a criminal defendant claims impermissible exclusion of jurors on the basis of race are analyzed under *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986). When we review a trial court's decision on a *Batson* challenge, we use the following standards:

> If the first step is at issue (whether the opponent of the challenge has satisfied his burden of demonstrating a prima facie case of discrimination), we review the trial court's underlying factual findings for clear error, and we review questions of law de novo. If *Batson*'s second step is implicated (whether the proponent of the peremptory challenge articulates a race-neutral explanation as a matter of law), we review the proffered explanation de novo. Finally, if the third step is at issue (the trial court's determinations whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination), we review the trial court's ruling for clear error.[3] [*People v Knight*, 473 Mich 324, 345; 701 NW2d 715 (2005) (footnoted added).]

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 US at 80; see

---

[2] Briggs-Cody's attorney initially made this objection at trial, and Rogers' attorney joined the objection. However, only Rogers—not Briggs-Cody—raises this issue on appeal.

[3] "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (citation omitted). The trial court's ultimate factual finding with respect to the third step in the *Batson* analysis is "accorded great deference." *Knight*, 473 Mich at 344.

also *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014).  To determine if such a violation of the Equal Protection Clause has occurred, a trial court uses a three-step process. *Batson*, 476 US at 96-98; *Armstrong*, 305 Mich App at 237-238.

First, the defendant must establish a prima facie case of discrimination based on race. *Armstrong*, 305 Mich App at 238.  To do so, a defendant must show that:

> (1) he or she is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. [*Id.*, quoting *Knight*, 473 Mich at 336.]

"[I]f the proponent of the [peremptory] challenge [that removed the potential jurors at issue] offers a race-neutral explanation and the trial court rules on the ultimate question of purposeful discrimination, the first *Batson* step (whether the opponent of the [peremptory] challenge made a prima facie showing) becomes moot," and it is unnecessary for the court to perform the analysis associated with that step. *Knight*, 473 Mich at 338.

If the defendant establishes the prima facie case of discrimination based on race, the prosecutor may rebut the prima facie case by providing a race-neutral reason for dismissing the juror in question.  *Armstrong*, 305 Mich App at 238.  The trial court must then decide if the prosecutor's reason is a pretext for discrimination.  *Id*.

Here, Rogers unconvincingly argues that the prosecution violated the mandates of *Batson* and impermissibly excluded black individuals from the jury.  Although the trial court ruled that Rogers' *Batson* challenge had no merit before it required the prosecutor to give a race-neutral reason for the dismissal of the potential jurors, the prosecution nonetheless provided such reasons.  After it heard the prosecution's explanations, the trial court again held that Rogers' *Batson* challenge had no merit.  Because the trial court ruled on "the ultimate question of purposeful discrimination," we need not review its decision that Rogers failed to establish a prima facie case of racial discrimination.  *Knight*, 473 Mich at 338.  Accordingly, we look to the second and third *Batson* factors—respectively, (1) whether the proponent of the peremptory challenge (here, the prosecution) articulates a race-neutral explanation as a matter of law, and (2) whether the race-neutral explanation is a pretext and if the opponent of the challenge (here, Rogers) has proved purposeful discrimination—in our review of the trial court's determination. *Id*. at 345.

When it explained its decision to exercise peremptory challenges on the potential jurors in question, the prosecution stated that it had done so because the jurors: (1) exhibited certain body language; or (2) would likely be overly sympathetic to defendants because defendants were young men.[4]  These rationales are a "clear and reasonably specific explanation of the legitimate reasons for exercising the challenges."  *Batson*, 476 US at 98 n 20 (citation omitted).  The

---

[4] Defendants are indeed young men—Rogers was 23 and Briggs-Cody was 22 at the time of trial.

-3-

prosecution's explanations are corroborated by the fact that it asked potential jurors during voir dire if they would be sympathetic toward defendants because of their young ages, and explicitly mentioned a juror's body language as a reason for using a peremptory challenge against him. The trial court therefore properly held that the prosecutor provided a race-neutral reason for dismissing the potential jurors in question. See *Armstrong*, 305 Mich App at 238.

The trial court also correctly determined that Rogers failed to show purposeful discrimination, because the prosecution's race-neutral explanation was not a pretext for racial discrimination. Excluding a potential juror for being sympathetic to a defendant's age is not an "implausible or fantastic justification[]." *Purkett v Elem*, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995). Moreover, "evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Knight*, 473 Mich at 364. In this case, not only did the trial court observe the prosecution's demeanor when he provided his explanation for dismissing the potential jurors at issue, but the court also witnessed the potential jurors' demeanor when they were questioned during voir dire. Although these individuals said they would not be sympathetic to defendants because of their young ages, the transcripts do not reflect their "facial expressions, body language, and manner of answering questions." See *People v Unger (On Remand)*, 278 Mich App 210, 258; 749 NW2d 272 (2008). The trial court properly ruled that Rogers' *Batson* claim of error had no basis, and his argument to the contrary is without merit.[5]

## 2. EVIDENTIARY ISSUES

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion, which occurs when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (citation omitted). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Id.* at 565-566.

Here, Rogers claims that the trial court erred in admitting "other acts" evidence—namely, the evidence of the circumstances surrounding defendants' arrest and the recovery of firearms from the car in which defendants were arrested—in violation of MRE 404(b). Rogers' argument is wrongheaded and misstates the law, because the evidence of which he complains is not "other acts" evidence implicated by MRE 404(b). Rather, it is res gestae evidence, which is an exception to MRE 404(b). See *People v Robinson*, 128 Mich App 338, 340; 340 NW2d 303 (1983).

"Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978).

---

[5] We note that the trial court's comments on the fact that the defense attorneys, prosecutor, trial judge, and officer in charge are black is not necessarily related to the question of whether the prosecutor used his peremptory challenges to exclude prospective jurors because of their race.

It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence. [*Id*.]

Res gestae evidence is admissible because "it is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place." *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996). In sum, MRE 404(b) does not preclude the admission of evidence that allows the jury to hear the "complete story." *Id*. at 742.

The evidence of the circumstances surrounding defendants' arrest and the recovery of firearms from the vehicle in which they were arrested not only provided the jury with context, but was also relevant evidence that linked defendants to the murder.[6] At the hearing on the prosecution's motion in limine, the prosecutor noted that the murderers were driving a red car on January 3, 2013. On January 7, 2013, defendants were passengers in a red 2009 Volkswagen Jetta. Rogers's then-girlfriend owned the car, and Rogers borrowed her car the night of the shooting. One of the robbery victims also stated that the rifle found in the Jetta looked like the one held by Briggs-Cody during the shooting. Thus, the evidence that defendants were in a red 2009 Volkswagen Jetta four days after the shooting and that a rifle was also found in the car directly tied defendants to the shooting.[7]

## 3. JUDGMENT OF SENTENCE

Rogers did not challenge his sentence in the trial court, so this issue is unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). An unpreserved claim is reviewed for plain error that affects a defendant's substantial rights. *People v King*, 297 Mich App 465, 481; 824 NW2d 258 (2012). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130

---

[6] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

[7] Nor did the trial court err when it allowed a Michigan State Trooper to testify that two handguns were also found in the Jetta. Despite the fact that both parties later stipulated that neither of these handguns were identical to those used in the murder, "[e]vidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989).

(1999). Issues of statutory interpretation, including whether the trial court erred in ordering a defendant's felony-firearm sentence to be served consecutively to his other sentences, are reviewed de novo. *People v Clark*, 463 Mich 459 n 9; 619 NW2d 538 (2000).

"From the plain language of the felony-firearm statute, it is evident that the Legislature intended that a felony-firearm sentence be consecutive only to the sentence for a specific underlying felony." *Clark*, 463 Mich at 463. MCL 750.227b(2) provides that a term of imprisonment for felony-firearm "shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of *the felony* or attempt to commit *the felony*." (Emphasis added.) This emphasized language refers back to the predicate offense discussed in MCL 750.227b(1)—"the offense during which the defendant possessed a firearm." *Clark*, 463 Mich at 464.

Here, Rogers unconvincingly says that the trial court erred when it made his sentence for his first-degree murder and felony-firearm convictions consecutive. Though the amended felony information mistakenly lists the underlying felony for his felony-firearm charge as armed robbery and/or larceny,[8] an offense of which he ultimately was not charged, he has failed to show that this clerical error prejudiced him in any way. *Carines*, 460 Mich at 763-764.

In any event, the trial court instructed the jury that defendant was charged with "possessing a firearm at the time he committed or attempted to commit the crime of murder in the first degree or murder in the second degree." The court said the elements were:

---

[8] Rogers was presumably aware of this mistake, yet he did nothing to correct it in the trial court. The felony information indicates that the sentence for the felony-firearm conviction would be two years' imprisonment, consecutive to and preceding "any term of imprisonment imposed for the felony or attempted felony conviction." Rogers had notice that the prosecution intended first-degree, premeditated murder to serve as the underlying basis for the felony-firearm charge, because the first-degree murder charge is the only other charge listed on the felony information. Accordingly, the felony-firearm sentence could not have been consecutive to any other sentence besides the murder sentence. As such, the prosecution obviously sought consecutive sentences for the first-degree murder and felony-firearm convictions, if defendant was convicted of both. Because Rogers had notice of this intent, he had the opportunity to "adequately prepare a defense" and "respond to the charges against him," but he did not. *People v Chapo*, 283 Mich App 360, 364; 770 NW2d 68 (2009).

Had Rogers actually raised this issue in the trial court, it could have been remedied. Although the amended information is not dated, the court used it to arraign Rogers on March 27, 2013. Thus, he had several *months* before his trial began to object to the information, question its accuracy, or argue that his sentence for felony-firearm, if he was convicted, should not be consecutive to any other sentences. If Rogers had done so, then the felony information could have been amended to fix this error, so that first-degree murder was listed as the underlying felony for the felony-firearm charge. "A trial court may permit amendment of the information at any time to correct a variance between the information and the proofs, unless doing so would unfairly surprise or prejudice the defendant." *Unger*, 278 Mich App at 221.

First, that the defendant committed or attempted to commit either of those crimes which have been defined for you. It is not necessary however that the defendant be convicted of a [sic] that crime.

Second, that at the time the defendant committed or attempted to commit a crime he knowingly carried or possessed a firearm. A pistol is a firearm.

The court gave Rogers' lawyer the opportunity to voice any objections to the jury instructions, and the attorney did not raise any challenge to the court's instruction on the felony-firearm charge. In light of these instructions, the jury obviously found that Rogers used a firearm to commit first-degree murder. Again, Rogers' attorney also did not object at sentencing when the court sentenced Rogers to life imprisonment for his first-degree murder conviction and two years' imprisonment for his felony-firearm conviction, to be served consecutively.

## B. BRIGGS-CODY'S APPEAL

### 1. IDENTIFICATION EVIDENCE[9]

"A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *People v Henry (After Remand)*, 305 Mich App 127, 160-161; 854 NW2d 114 (2014). A photographic lineup may be impermissibly suggestive if the witness is told that the police have apprehended the right person or the defendant is singled out in some way. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). However,

> physical differences between a suspect and other lineup participants do not, in and of themselves, constitute impermissible suggestiveness. Differences among participants in a lineup are significant only to the extent they are apparent to the witness and substantially distinguish defendant from the other participants in the line-up. It is then that there exists a substantial likelihood that the differences among line-up participants, rather than recognition of defendant, was the basis of the witness' identification. [*Henry*, 305 Mich App at 161.]

When determining if an identification procedure was suggestive, a court should consider "the totality of the circumstances." *Id*. "[S]light physical differences or variations" between a defendant and the other lineup participants merely constitute "noticeable differences," and do not "result in a substantial likelihood of misidentification." *McDade*, 301 Mich App at 358. If lineups did not include individuals with "slight physical differences or variations, it would make it nearly impossible for the police to compose a lineup, forcing authorities to search for 'twin-like' individuals to match against a defendant." *Id*.

---

[9] "The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). The trial court clearly errs when "the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

Here, Briggs-Cody says the trial court erred when it denied his pretrial motion to suppress evidence that one of the robbery victims identified him in a photographic lineup as the man who had the rifle at the scene of the shooting. Specifically, Briggs-Cody argues that the photographic lineup the police showed to the witness was impermissibly suggestive, because none of the other participants in the lineup looked like him, due to differences in skin tone, eye color, and other physical characteristics.

This argument is not convincing, because, as noted, "physical differences between a suspect and other lineup participants" are generally insufficient to "constitute impermissible suggestiveness." *Henry*, 305 Mich App at 161. Physical differences are significant only when they substantially distinguish the defendant from the other individuals in the lineup, or when the defendant is singled out in some way. *Id*. Again, "slight physical differences or variations" between a defendant and the other lineup participants merely constitute "noticeable differences," and do not "result in a substantial likelihood of misidentification." *McDade*, 301 Mich App at 358.[10]

In addition, the court made the photographic lineup available to the jury, and both parties discussed it thoroughly at trial. The jury thus had the opportunity to see the physical differences between Briggs-Cody and the participants, and determine if those differences undermined the victim's identification of Briggs-Cody as one of the assailants. "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). For these reasons, the trial court properly denied Briggs-Cody's motion to suppress the victim's pretrial identification of him from a photographic lineup. See *McDade*, 301 Mich App at 356.

## 2. ASSISTANCE OF COUNSEL[11]

Criminal defendants have the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a

---

[10] Moreover, the description the victim gave to the police stated that the man who held the rifle during the shooting was black, 24 to 25 years old, and about 5 feet, 7 inches tall. Given this vague description, it is understandable that the lineup included individuals with different skin tones, varied eye colors, and other physical dissimilarities. And Briggs-Cody could not have been singled out by the lineup, because the participants *all* varied in terms of physical appearance. See *Gray*, 457 Mich at 111.

[11] Generally, whether a defendant had the effective assistance of counsel is a "mixed question of fact and constitutional law." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Findings of fact are reviewed for clear error, while questions of law are reviewed de novo. *Id*. Because Briggs-Cody did not move for a new trial or an evidentiary hearing in the trial court, our "review is limited to mistakes apparent from the record." *Id*.

defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne,* 285 Mich App 181, 190; 774 NW2d 714 (2009). Counsel is presumed to employ effective trial strategy, and it is a heavy burden for a defendant to prove otherwise. *Id*. at 190. "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Id*. This is in part because jurors do not need an expert to tell them that memories are fallible—instead, "questions of eyewitness identification, fading memories, witnesses' body language, and the like involve obvious human behavior from which jurors can make commonsense credibility determinations." *People v Kowalski*, 492 Mich 106, 143; 821 NW2d 14 (2012).

Here, Briggs-Cody unavailingly claims that his trial counsel gave him ineffective assistance because she did not call an expert witness to testify about the supposed fallibility of eyewitness identification. But it was unnecessary for trial counsel to call such a witness, because doing so did not "deprive[] defendant of a substantial defense." *Payne*, 285 Mich App at 190. Briggs-Cody's attorney explicitly argued that the prosecution's witnesses misidentified him, and she thoroughly examined the witness who identified Briggs-Cody in the photographic lineup. The identifying witness also testified that he was kicked in the eye, could not see very clearly during the robbery, and that he had smoked marijuana earlier in the day. The jury heard his testimony, which brought into question his identification of Briggs-Cody—and yet the jury still convicted Briggs-Cody. Briggs-Cody has failed to show that his attorney's decision to attack the credibility of the witness' identification of him through cross-examination and highlights of his earlier testimony was not a sound trial strategy. See *Payne*, 285 Mich App at 190.

In any event, Briggs-Cody does not provide an offer of proof with the name of a proposed expert who would have testified in his favor, or the exculpatory nature of the expected testimony. A defendant does not establish "the factual predicate for his claim" if he offers "no proof that an expert witness would have testified favorably if called by the defense." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2 818 (2003).

Accordingly, Briggs-Cody's trial attorney did not provide him with ineffective assistance, and his claim to the contrary is without merit.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Henry William Saad