*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ABSOLEM STEVEN-JAMAR THOMAS,

        Defendant-Appellant.

UNPUBLISHED
June 11, 2020

No. 346923
Kent Circuit Court
LC No. 18-003273-FH

Before: K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c), aggravated indecent exposure, MCL 750.335a(2)(b), and fourth-degree criminal sexual conduct (CSC-IV) (victim between 13 and 15 years old), MCL 750.520e(1)(a). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 35 to 80 years' imprisonment for the indecent exposure by a sexually delinquent person conviction, and 8 to 15 years' imprisonment for the CSC-IV and aggravated indecent exposure convictions. Defendant contends on appeal that there were defects in his waiver of counsel, during jury selection, at trial in the form of the erroneous admission of other-acts evidence, and at sentencing. As explained below, we note that it was erroneous for the trial court to treat indecent exposure by a sexually delinquent person and aggravated indecent exposure as two separate charges. Accordingly, we vacate the aggravated indecent exposure conviction and corresponding sentence. In all other aspects, we affirm.

## I. FACTUAL BACKGROUND

This case arises out of conduct that defendant exhibited toward a minor victim at an apartment in Grand Rapids, Michigan.[1] Defendant had moved into his girlfriend's apartment, and

---

[1] Allegations were actually made against defendant by two separate minor victims. However, defendant's convictions arose in relation to only one of those victims and defendant was acquitted for conduct alleged by the other victim.

the victim was the girlfriend's niece who often stayed at the apartment. The victim accused defendant of exposing his penis and masturbating in front of her. Defendant was charged with a number of crimes related to his conduct, and ultimately convicted of aggravated indecent exposure, indecent exposure by a sexually delinquent person, and CSC-IV. Defendant was sentenced as noted above and this appeal followed.

## II. RIGHT TO COUNSEL

Defendant first contends that the trial court erred by initially accepting defendant's waiver of his right to counsel. In the alternative, defendant asserts that the trial court erred by later revoking defendant's right to represent himself. We disagree.

Before the trial court, defendant requested to represent himself, and the trial court allowed him to do so. However, during defendant's opening statement, the trial court determined that defendant was unable to represent himself and required standby counsel to step in. Defendant did not object to the validity of his waiver nor the trial court's ultimate denial of defendant's right to represent himself. As a result, these issues are not preserved for appeal. See *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016).

"This Court reviews unpreserved claims for plain error affecting a defendant's substantial rights." *People v Gibbs*, 299 Mich App 473, 492; 830 NW2d 821 (2013). Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

The Sixth Amendment provides that a defendant in a criminal prosecution "shall enjoy the right . . . to have the Assistance of counsel for his defense." US Const, Am VI. See also Const 1963, art 1, § 20. "While a defendant may choose to forgo the assistance of counsel at trial, any waiver of the right to counsel must be knowing, voluntary, and intelligent." *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004). To effectuate a valid waiver of counsel, the trial court

> must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business. [*Id*. at 190, citing *People v Anderson*, 398 Mich 361, 368; 247 NW2d 857 (1976).]

Moreover, the court must satisfy the requirements provided in MCR 6.005(D), which provides:

> (D) The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
>> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

If the trial court fails to substantially comply with all of the above articulated requirements, "then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Russell*, 471 Mich at 191-192. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Id.* at 191 (quotation marks and citation omitted).

The trial court did not err in determining that defendant's waiver was knowing and intelligent. Defendant stated that he wanted to represent himself several times. The trial court reminded defendant at least twice that defendant was facing a potential minimum of 37 years' imprisonment with the possibility of life. The trial court explained to defendant that his request to represent himself was comparable to electing to perform his own surgery. Defendant acknowledged the risk, but nonetheless expressed that he wished to move forward and represent himself. The trial court then determined that defendant could represent himself with defense counsel as standby counsel. We conclude that the trial court satisfied all the requirements from *Anderson* and MCR 6.005(D). See *Russell*, 471 Mich at 190-191. As a result, defendant's waiver was valid, and he has not shown that the trial court's acceptance of that waiver constituted plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

Notably, even if there was some defect in the trial court's acceptance of defendant's waiver, the trial court later determined during defendant's opening statement that defendant could not represent himself. As a result, defendant only represented himself for a short period of time and was represented by counsel for the majority of his trial. Nevertheless, in stark contradiction to his initial argument on appeal, defendant suggests as an alternative argument that the trial court erred in revoking defendant's right to represent himself. We again disagree.

The record reflects that defendant's attempt at self-representation was disruptive to the judicial process. The trial court reminded defendant multiple times that his opening statement must be relevant to the testimony and facts of the case. The trial court was nevertheless required to excuse the jury twice during these discussions, which occurred before the prosecution had even called its first witness. Defendant's inability to follow the trial court's repeated instructions regarding his opening statement showed a likelihood of further serious disruptions during the trial if defendant was allowed to continue, as well as a likelihood that defendant could prejudice himself in the presence of the jury. Accordingly, the trial court did not err in revoking defendant's right to represent himself. See *Russell*, 471 Mich at 190. Additionally, defendant has not shown that this revocation amounted to plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## III. JURY SELECTION

Defendant next contends that a *Batson*[2] violation occurred during voir dire, and that defendant's right to an impartial jury drawn from a fair cross-section of the community was violated. We disagree.

Again, defendant did not raise this claim in the trial court and it is, therefore, unpreserved. See *Solloway*, 316 Mich App at 197. As a result, we review for plain error affecting defendant's substantial rights. See *Gibbs*, 299 Mich App at 492. "Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race." *People v Knight*, 473 Mich 324, 335; 701 NW2d 715 (2005*)*. Determining the constitutionality of a peremptory challenge under *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), involves a three-step process: (1) "the opponent of the peremptory challenge must make a prima facie showing of discrimination;" (2) "if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike;" and (3) "if the proponent provides a race-neutral explanation as a matter of law, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has provided purposeful discrimination." *Knight*, 473 Mich at 336-338. Defendant's argument on appeal centers on the first step, as defendant suggests that a prima facie case for a *Batson* violation is present, and thus the prosecution should have been required to articulate a race-neutral explanation for the strike. *Id*. at 336-337. To establish a prima facie case of racial discrimination in a peremptory challenge, the opponent of the challenge must show:

> (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. [*Id*. at 336, citing *Batson*, 476 US at 96.]

Defendant contends that a *Batson* violation occurred through the removal of prospective Juror M, who defendant suggests shared his black and Moorish American heritage. As a result, according to defendant, no black jurors were impaneled. Be the latter fact as it may, the record simply does not support the contention that a *Batson* violation occurred.

During voir dire, defense counsel asked the prospective jurors whether anyone knew what a Moorish American was, and then engaged with an unidentified juror. Later, the trial court excused a prospective juror for cause as soon as she was called because the trial court saw her sleeping in the back corner of the room during questioning. After another juror was excused for cause, the court clerk called prospective Juror M. The prosecutor asked to approach the trial court, and following an off-record bench conference, the trial court excused Juror M for cause. Jury selection continued. During the lunch break, the parties explained on the record what had occurred with respect to Juror M. The prosecutor explained that he indicated to the trial court and defense counsel that Juror M had been sleeping in the courtroom. In fact, the prosecutor believed that the trial court was actually referring to Juror M when the trial court dismissed the other juror for sleeping. In any event, the prosecutor believed that sleeping in the courtroom was a proper reason

---

[2] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986)

to excuse Juror M from the jury. Defense counsel explained that he did not observe either juror sleeping, and that he would have liked to have at least examined the jurors before they were removed. However, he did not question the trial court or the prosecutor.

First, Juror M was excused for cause by the trial court. The prosecutor did not use a peremptory challenge to remove this juror from the jury. Moreover, the record does not establish Juror M's race or show that she was Moorish American. That is merely a claim that defendant makes on appeal on the basis of her hyphenated last name and because defense counsel suggested that she raised her hand indicating that she was familiar with Moorish Americans. At any rate, defendant simply cannot establish that this juror was removed on the basis of her race. Further, another juror was excused for cause for the same thing—sleeping—which is a race-neutral reason. See *Knight*, 473 Mich at 337 (explaining that "the issue is whether the proponent's explanation is facially valid as a matter of law"). Finally, even if Juror M was Moorish American, there is no indication that the trial court or the prosecutor knew this when the prosecutor requested the bench conference and the trial court excused her. As a result, defendant has not established that the trial court excused Juror M as a result of racial discrimination. See *id*. at 336-337. Likewise, defendant cannot show that the trial court's excusal constituted plain error affecting his substantial rights. See *Carines*, 460 Mich at 763.

## IV. OTHER-ACTS EVIDENCE

Defendant next contends that the trial court abused its discretion by admitting other-acts evidence at trial pursuant to MRE 404(b). We disagree.

"The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted). However, when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *McDaniel*, 469 Mich at 412. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome[-]determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (quotation marks and citation omitted).

MRE 401 states that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In addition, MRE 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 404(b) provides:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other

crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

(2) The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.

Our Supreme Court has articulated the following requirements for the admission of other-acts evidence:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017) (citation omitted).]

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other[-]acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke (On Remand)*, 251 Mich App 282, 289; 651 NW2d 490 (2002).

Defendant denied the allegations against him in this case, which "places all the elements of the charge at issue." *People v Sabin (After Remand)*, 463 Mich 43, 60; 614 NW2d 888 (2000). In *Sabin*, 463 Mich at 62, the Michigan Supreme Court explained that "evidence of other instances of sexual misconduct that establish a scheme, plan, or system may be material in the sense that the evidence proves that the charged act was committed." Further, the Court stated that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestation of a common plan, scheme, or system." *Id*. at 63. "Logical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception or plot." *Id*. at 64.

First, defendant's assertion that the length of time between the prior instances and the current allegations demands exclusion of the evidence is without merit. See *People v Yost*, 278 Mich App 341, 404-405; 749 NW2d 753 (2008) (stating that, although remoteness in time "limits the logical relevance of these other acts to show intent," "there is no time limit applicable to the admissibility of other acts evidence"). Second, the prior incidents of indecent exposure were substantially similar to the allegations in this case. The evidence relating to the prior incidents that occurred while defendant was incarcerated showed that defendant exposed his penis or masturbated in the view of female staff members. An officer from the Kent County jail facility provided similar testimony. She stated that she observed defendant standing in the doorway of his cell looking directly at her with his penis in his left hand while he made "motions with it."

As to the allegations leading to the present case, both girls testified that defendant exposed his penis and masturbated in front of them at their aunt's apartment. The prior incidents were sufficiently similar to the charged offenses in the current case to support an inference that these occurrences constituted a common plan, scheme, or system. Defendant would expose his penis and masturbate in front of women in his vicinity. See *Sabin (After Remand)*, 463 Mich at 63. Moreover, this evidence was relevant to prove that defendant was a sexually delinquent person, which requires repetitive or compulsive acts. See MCL 750.10a.

Lastly, this evidence was not unduly prejudicial. As already discussed, this evidence was highly relevant to show that the alleged instances of indecent exposure occurred and that defendant was a sexually delinquent person under MCL 750.335a(2)(c). See *Sabin (After Remand)*, 463 Mich at 60. Further, the trial court provided the following instruction to the jury:

> Now, you have heard evidence that was introduced to show that defendant committed other improper acts or crimes for which he is not on trial. If you believe this evidence, you must very—be very careful to consider it only for certain purposes. You may only think about whether or not this evidence tends to show proof of motive, opportunity, intent, preparation, scheme, plan, system of doing an act, knowledge, identity or absence of mistake or accident. You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that he is likely to commit crimes. You must not convict the defendant here because you think he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed these alleged crimes, or you must find him not guilty.

This Court has explained that "[a] carefully constructed limiting instruction rendered by the trial court" is generally "sufficient to counterbalance any potential for prejudice spawned by" the admission of other-acts evidence. *Martzke (On Remand)*, 251 Mich App at 295. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). As a result, defendant has not shown that the prior-acts evidence was unduly prejudicial or that the jury considered it for improper purposes. Therefore, the trial court did not abuse its discretion by allowing the other-acts evidence. See *McDaniel*, 469 Mich at 412.

## V. SENTENCING

Defendant lastly contends that the trial court erred by sentencing him to two different sentences for the aggravated indecent exposure and indecent exposure as a sexually delinquent person convictions. Moreover, defendant asserts that prior record variable (PRV) 7 was improperly assessed at 20 points. We agree.

First, defendant was convicted of aggravated indecent exposure, MCL 750.335a(2)(b), and indecent exposure by a sexually delinquent person in violation of MCL 750.335a(2)(c). MCL 750.10a defines "sexually delinquent person" as

> any person whose sexual behavior is characterized by repetitive or compulsive acts which indicate a disregard of consequences or the recognized rights of others, or by the use of force upon another person in attempting sex relations of either a

heterosexual or homosexual nature, or by the commission of sexual aggressions against children under the age of 16.

The parties agree that the jury's conclusion that defendant was a sexually delinquent person should not have been treated as a separate crime carrying a separate sentence for the purposes of MCL 750.335a. Indeed, "MCL 750.10a is a definitional statute, and does not carry the possibility of a separate conviction or sentence independent of other charges in the Criminal Code." *People v Craig*, 488 Mich 861, 861; 788 NW2d 13 (2010). See also *People v Arnold (On Remand)*, 328 Mich App 592, 597 n 2; 939 NW2d 690 (2019). As a result, the sexual delinquency component of indecent exposure was not a separate or standalone charge, but an enhancement of the charge. Therefore, defendant's 8- to 15-year sentence for indecent exposure should be vacated, leaving two remaining sentences: defendant's 8- to 15-year sentence for CSC-IV and the 35- to 80-year sentence for aggravated indecent exposure as a sexually delinquent person.

Next, we again agree with both parties that defendant was improperly assessed 20 points for PRV 7 on the basis of the same above error : defendant was assessed additional points because indecent exposure by a sexually delinquent person and aggravated indecent exposure were treated as separate offenses. MCL 777.57(1)(a) provides that PRV 7 should be assessed at 20 points if the offender has two or more subsequent or concurrent felony convictions. PRV 7 should be assessed at 10 points for an offender with one subsequent or concurrent conviction. MCL 777.57(1)(b). In this case, PRV 7 should have been assessed at 10 points because defendant was convicted of two total offenses (meaning that he had one concurrent conviction). However, the corrected assessment of PRV 7 does not alter defendant's minimum sentencing guideline range. See MCL 777.62. As a result, although we remand this case to the trial court to vacate defendant's second 8- to 15-year sentence, and to correct the judgment of sentence and sentencing investigation report, defendant is not entitled to resentencing. See *People v Francisco*, 474 Mich 82, 90 n 8; 711 NW2d 44 (2006).

To the extent that the judgment of sentence reflects that aggravated indecent exposure was a separate offense from indecent exposure by a sexually delinquent person, we vacate the aggravated indecent exposure conviction and corresponding 8- to 15-year sentence. In all other aspects, we affirm.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle