*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANGELO EUGENE HUBBARD,

Defendant-Appellant.

UNPUBLISHED
October 28, 2025
10:24 AM

No. 369548
Macomb Circuit Court
LC No. 2022-002981-FC

Before: REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree felony-murder (felony murder), MCL 750.316(1)(b), first-degree premeditated murder (premeditated murder), MCL 750.316(1)(a), first-degree arson (arson), MCL 750.72, and receiving and concealing a stolen motor vehicle (receiving and concealing), MCL 750.535(7). He was sentenced to life imprisonment without the possibility of parole for the felony murder and premeditated murder convictions, 37 to 60 years' imprisonment for the arson conviction, and 32 to 60 months' imprisonment for the receiving and concealing conviction. We remand the case to the trial court for the ministerial task of modifying defendant's judgment of sentence to reflect that he is convicted and sentenced for one count of first-degree murder supported by two theories: premeditated murder and felony murder. We affirm in all other respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2022, firefighters responded to a fire at a condominium unit. Once the fire in the unit was extinguished, firefighters found the victim's heavily charred body on the floor of the bedroom. A subsequent police investigation revealed that defendant and the victim were in a relationship and that the victim resided alone in the unit in which she was found. The investigation further revealed that defendant went to the victim's condo on February 4, 2022, killed her, took items from her condo and left, returned the next day, took more items, and then set fire to her body and the unit. Defendant used a stolen van in connection with these events. Autopsy results indicated that the victim's cause of death was "multiple sharp force injuries," not the fire. Defendant was convicted and sentenced as noted. He now appeals.

## II. JURORS BY NUMBERS

Defendant first argues his due-process rights were violated because the jurors in his trial were referred to by numbers, and the trial court did not give a cautionary instruction. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant failed to raise this issue in the trial court, rendering his argument unpreserved. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). We review unpreserved issues for plain error. *Id*. To obtain relief under the plain-error standard, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial—that is, that it affected the outcome of the trial. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is only warranted if the defendant is actually innocent or if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 793-794.

## B. ANALYSIS

An "anonymous jury" is "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Hanks*, 276 Mich App at 93, quoting *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). "A challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Hanks*, 276 Mich App at 93. In *Williams*, 241 Mich App at 523-5245, this Court held that referencing jurors by numbers did not violate the defendant's due-process rights because (1) there was no indication "that any information was actually withheld from the parties[,]" (2) the defendant had access to the jurors' biographical information and there was no indication that his "ability to effectively examine the venire was compromised in any way[,]" (3) there was "nothing in the record to indicate that the use of numbers undermined the presumption of innocence[,]" and (4) there was "no suggestion that [the] jurors understood the use of numbers rather than names to be anything out of the ordinary."

Similarly, in this case, the jurors in this case were referred to by numbers, but nothing in the record suggests that their biographical information was withheld from the parties. Both parties conducted extensive voir dire, and there is nothing that suggests any of the jurors believed that the use of numbers rather than their names was anything other than a common, convenient method for the trial court to manage the jury-selection process. Furthermore, the trial court instructed the jurors—both in its preliminary and closing instructions—that defendant was presumed to be innocent until proven guilty. Thus, defendant's argument that his due-process rights were violated by the reference to jurors by number lacks merit.[1]

---

[1] Defendant emphasizes that this Court, in *Hanks*, 276 Mich App at 94, "strongly urge[d] trial courts to advise the venire that any use of numbers in lieu of jurors' names [was] simply for logistical purposes and they should not in any way consider it a negative against the defendant."

## III. JUROR REMOVAL BASED ON RACE

Defendant next argues that the trial court erred by rejecting his *Batson*[2] challenge to the prosecutor's peremptory removal of Juror 122, who was African American. We disagree.

## A. STANDARD OF REVIEW

Our standard of review for examining a *Batson* challenge depends on which step is being challenged. *People v Knight*, 473 Mich 324, 345; 701 NW2d 715 (2005). While defendant frames his argument on appeal as challenging the third *Batson* step, the record indicates the trial court rejected defendant's *Batson* challenge on the basis of the first step.[3] Thus, "we review the trial court's underlying factual findings for clear error, and we review questions of law de novo." *Id*. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 365; 836 NW2d 266 (2013).

## B. ANALYSIS

"Under the Equal Protection Clause of the Fourteenth Amendment, a party may not exercise a peremptory challenge to remove a prospective juror solely on the basis of the person's race." *Knight*, 473 Mich at 335. "[A] defendant is not entitled to a jury of a particular racial composition as long as no racial group is systematically and intentionally excluded." *Id*. at 351.

A three-step process is used to determine "the constitutional propriety of a peremptory challenge." *Id*. at 336. At issue in this case is the first step: "the opponent of the peremptory challenge must make a prima facie showing of discrimination." *Id*.

> To establish a prima facie case of discrimination based on race, the opponent must show that: (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group

---

However, our suggestion in *Hanks* was clearly dicta. Moreover, even if it was not, we would nonetheless hold that, in this case, the trial court's failure to do so sua sponte, given the circumstances discussed, is not a sufficient basis for a due-process violation.

[2] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

[3] The prosecutor objected to defendant's *Batson* challenge by arguing that race did not factor in the prosecutor's questions or the juror's answers, noting that, while Juror 122 was African American, the prosecutor's other two peremptory removals were white males. The trial court agreed, and rejected defendant's challenge. Given these facts, the trial court rejected defendant's challenge on the basis of the first *Batson* step, which required that he demonstrate a prima facie case of discrimination, not the third step, which considers whether the proffered race-neutral reason for a removal was pretextual. *Knight*, 473 Mich at 336-338. As such, this opinion need not address the other *Batson* steps.

from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. [*Id*.]

The trial court did not err in concluding that defendant failed to satisfy the first *Batson* step. As a preliminary issue, defendant claims, without evidence, that Juror 122 was the only African American in the jury pool. The trial court, however, was unsure whether this claim was true, and defendant points to no evidence on appeal supporting his claim. But, even if Juror 122 was the only African American in the jury pool, this, without more, is insufficient to establish a prima facie showing of discrimination. See *People v Williams*, 174 Mich App 132, 137; 435 NW2d 469 (1989) ("The mere fact that the prosecutor used one or more peremptory challenges to excuse [African American individuals] from the jury venire is insufficient to make a prima facie showing of discrimination," and "[t]he mere fact that no member of the defendant's race ended up sitting on the jury is likewise insufficient to make a prima facie showing of discrimination."). Because defendant failed to establish a prima facie showing of discrimination, the trial court did not err in rejecting his *Batson* challenge.

## IV. INVOLUNTARY STATEMENTS

Defendant next argues that the trial court should have suppressed his statements to police because they were involuntary. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews de novo the question of voluntariness." *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012) (quotation marks and citation omitted). "Deference is given, however, to the trial court's assessment of the credibility of the witnesses and the weight accorded to the evidence." *Id*. "The trial court's factual findings are subject to reversal only if clearly erroneous, meaning that this Court is left with a firm and definite conviction that a mistake has been made." *Id*.

## B. ANALYSIS

Our Supreme Court explained, in *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988), that:

The test of voluntariness should be whether, considering the totality of all the surrounding circumstances, the confession is "the product of an essentially free and unconstrained choice by its maker," or whether the accused's "will has been overborne and his capacity for self-determination critically impaired. . . ." The line of demarcation "is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."

In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any

-4-

advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. [Citations omitted.]

Defendant argues that his statements were not voluntary because he was sleep-deprived and had been denied his psychotropic medication while in jail. However, the detective who interviewed defendant for both interviews testified that defendant's speech was coherent and he seemed to understand the questions being asked. Defendant was able to converse effectively, and did not appear to be under the influence of any drugs or alcohol. During the first interview, when defendant alleged he heard voices inside his head, the detective asked defendant if he took medication and if a physician had diagnosed him with any condition. Defendant did not know if he had been officially diagnosed, and did not know the physician's name. The detective noted that defendant had claimed he was not being given his medication in jail and that he did not sleep much the night before the first interview, but, again, defendant could not provide a time or physician relating to his alleged diagnoses, instead telling the detective he needed to ask defendant's mother. The detective similarly testified that defendant did not seem to show any impaired cognition or mental-health concerns during the second interview.

Additionally, the parties stipulated to the admission of a competency-to-stand-trial report, which noted the lack of documentation to support defendant's claimed mental-health conditions as well as the lack of any mental-status impairment that would affect the voluntariness of his statements. Regardless of whether defendant was sleep-deprived, those that observed him found him to be coherent and capable of maintaining conversation. Given the totality of the circumstances, *id*., and our deference to the trial court's credibility determinations, *Ryan*, 295 Mich App at 396, the trial court did not err by admitting defendant's statements.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant next argues there was insufficient evidence to establish felony murder and premeditated murder. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews de novo whether there was sufficient evidence to support a conviction." *People v Kenny*, 332 Mich App 394, 402; 956 NW2d 562 (2020). "[T]his Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 402-403. "Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the

elements of a crime." *Id*. at 403. This Court "must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *Id*. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. (quotation marks and citation omitted).

## B. FELONY MURDER

As this Court has explained:

> The elements of felony murder are (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. [*People v Lane*, 308 Mich App 38, 57-58; 862 NW2d 446 (2014).]

The prosecutor alleged that defendant committed the murder while perpetrating or attempting to perpetrate a larceny. Larceny "of any kind" may be used as a predicate felony for felony murder. MCL 750.316(1)(b). Defendant argues the larceny was insufficient to convict him of felony murder because the larceny was an "afterthought." We disagree. The murder and larceny occurred at the same time and place, and according to defendant's statements to police, the victim was still alive when he began removing items from her home. Thus, defendant's own admission establishes sufficient evidence that he killed the victim during the commission of the larceny.

## C. PREMEDITATED MURDER

The elements of premeditated murder are "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). "[T]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id*. (quotation marks and citation omitted). "[W]hen considering a sufficiency-of-the-evidence issue, the question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation." *Id*. at 242 (quotation marks, brackets, and citation omitted).

"Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Walker*, 330 Mich App 378, 384; 948 NW2d 122 (2019) (quotation marks and citation omitted). "The requisite state of mind may be inferred from [the] defendant's conduct judged in light of the circumstances." *Oros*, 502 Mich at 243 (quotation marks and citation omitted). For example, "evidence of a struggle between the defendant and the victim can be evidence of premeditation and deliberation based on the defendant's opportunity to take a 'second look.' " *Id*. at 244. Additionally, "a defendant's attempt to conceal the killing can be used as evidence of premeditation." *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003).

According to defendant, he and the victim were in an argument that led to a physical struggle. It was during this struggle that defendant stabbed the victim 75 times. The nature of the

stabbing and the number of stab wounds support the reasonable inference that defendant had time to reflect before killing the victim. See *Oros*, 502 Mich at 244. Additionally, defendant's actions after the homicide—removing items from her home while she lay dead or dying, returning the next day to remove more items, and then setting the victim's body and condo on fire—also provide support for defendant's premeditated murder conviction. See *Gonzalez*, 468 Mich at 642 (finding sufficient evidence of premeditated murder because, among other things, "there was evidence that the defendant attempted to conceal his crime by burning the victim's body."). These circumstances were more than sufficient to support defendant's premeditated murder conviction.

## VI. DOUBLE JEOPARDY

Defendant finally argues, and the prosecutor agrees, that his convictions and sentences for two counts of first-degree murder for the death of one person violate the constitutional protection against double jeopardy. We agree.

## A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not object in the trial court regarding this double-jeopardy issue. Therefore, this issue is unpreserved. *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015). Because this issue is unpreserved, our review is limited to plain error. *Id*. To obtain relief under the plain-error standard, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial—that is, that it affected the outcome of the trial. *Carines*, 460 Mich at 763. Reversal is only warranted if the defendant is actually innocent or if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 793-794.

## B. ANALYSIS

"The United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense." *Ackah-Essien*, 311 Mich App at 31, citing US Const, Am V, and Const 1963, art 1, § 15. "The Double Jeopardy Clause protects against multiple punishments for the same offense in order to protect the defendant from being sentenced to more punishment than the Legislature intended." *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005).

"Where dual convictions of first-degree premeditated murder and first-degree felony murder arise out of the death of a single victim, the dual convictions violate double jeopardy." *People v Coomer*, 245 Mich App 206, 224; 627 NW2d 612 (2001). "The proper remedy is to modify the judgment of conviction and sentence to specify that defendant's conviction is for one count and one sentence of first-degree murder supported by two theories: premeditated murder and felony murder." *Id*.

Because defendant was convicted of premeditated murder and felony murder arising out of the death of one victim, which violates double jeopardy, we remand this case to the trial court for the ministerial task of modifying the judgment of conviction and sentence to specify that he has one conviction and one sentence for first-degree murder supported by two theories: premeditated murder and felony murder. We affirm in all other respects. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel